Tracy Donell SIMMONS *v.* STATE of Arkansas

CA CR 02-1369                                    118 S.W.3d 136

Court of Appeals of Arkansas
Division III
Opinion delivered September 17, 2003

*Boyd & Buie*, by: *Christina Boyd* and *Rufus T. Buie, III*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Tracy Donell Simmons, was charged with the crime of possession of cocaine with the intent to deliver. After the circuit court denied his motion to suppress, appellant entered a conditional plea of guilty to the lesser-included offense of possession of cocaine and was sentenced to ten years' imprisonment. On appeal, he argues that the circuit court erred in denying his motion to suppress because the cocaine was the fruit of his illegal detention by a police officer. We, however, affirm because appellant abandoned the contraband before he was seized by the officer.

Kevin Smith, who was a Stuttgart police officer, was the only person who testified at the suppression hearing. Smith told the court that on June 29, 2000, at approximately 1:50 a.m., he stopped a person who was walking down Third Street in Stuttgart. Smith parked his marked patrol unit on Third Street, facing west in the westbound lane of the two-lane street with his headlights on. He had not, however, activated his blue lights. Smith and the other person were standing at the left front corner of his patrol unit when Smith noticed a car approaching them from the west at what appeared to be a high and accelerating rate of speed.

As the car sped by, Smith leaned against the side of his patrol unit and pulled the pedestrian onto the hood. The passing vehicle then skidded to a stop. Smith turned around and approached it. Noticing that there were at least four occupants, he drew his sidearm. At about the same time, appellant exited the driver's door and approached Smith, yelling "What's going on?" (or some similar phrase) and gesticulating. Smith testified that appellant appeared agitated.

Smith asked appellant to put his hands on the car, but appellant continued gesticulate and yell, asking what was going on and what was Smith's problem. Smith again asked appellant to put his hands on the car, and appellant turned and began walking back to the car. After Smith asked a third time, appellant began running east on Third Street.

Smith ordered appellant to stop and then chased him on foot for several minutes. Appellant ran into a trailer park, and as Smith reached to grab appellant, he saw appellant throw something

underneath a vehicle that was parked in a driveway. Smith then grabbed appellant, and there was a scuffle as appellant tried to break free. Ultimately, Smith forced appellant to the ground and placed him in handcuffs. Other officers arrived at the scene and took control of appellant. Smith then looked under the vehicle to see what appellant had thrown. There, Smith found two baggies containing crack cocaine and two baggies containing marijuana.

On appeal from the circuit court's denial of his motion to suppress, appellant asserts that because the officer was not requesting that he furnish information or otherwise cooperate in the investigation or prevention of crime, his detention by the officer could not be justified under Rule 2.2(a) of the Arkansas Rules of Criminal Procedure,[1] and thus the circuit court should have suppressed the fruit of the illegal detention. Further, appellant argues that because the officer did not have reasonable suspicion that he was committing, had committed, or was about to commit a crime, the detention could not be justified under Rule 3.1 of the Arkansas Rules of Criminal Procedure,[2] likewise requiring suppression of the fruit of the illegal detention.

When we review a denial of a motion to suppress the evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Here, we conclude that the circuit court did not err in denying appellant's motion to suppress the contraband because it was not the fruit of a detention by the officer, as appellant abandoned it before he was seized.

In reaching our conclusion that appellant abandoned the contraband before he was seized by the officer, we are guided by

---

[1] Rule 2.2(a) provides in part that "[a] law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime."

[2] Rule 3.1 provides in part as follows:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

the United States Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621 (1991). In that case, Hodari fled from patrolling police as they approached him and a group of others on the street. An officer placed himself in Hodari's path, and Hodari, seeing that the officer was almost upon him, tossed away what appeared to be a small rock. A moment later, police tackled and handcuffed Hodari. The discarded rock was found to be crack cocaine.

█ The issue before the Court was whether, at the time he dropped the cocaine, Hodari had been "seized" within the meaning of the Fourth Amendment. If so, the drugs were the fruit of the seizure; if not, the drugs were abandoned by Hodari and lawfully recovered by police. The Court reasoned that a "seizure" requires the laying on of hands or the application of physical force to restrain movement; no seizure occurred if the police made a "show of authority" and the person continued to flee. In sum, the Court concluded that an arrest required either physical force or, if that is absent, submission to an assertion of authority.

█ Further, the Court noted that it had stated on several occasions, including in *Michigan v. Chesternut*, 486 U.S. 567 (1988), that a person has been "seized" within the meaning of the Fourth Amendment only if a reasonable person would have believed that he was not free to leave. In explaining this statement, the Court observed that this test stated a necessary, but not a sufficient, condition for a seizure effected through a "show of authority." In other words, the determination of whether there was a "show of authority" is not whether a person perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that perception to a reasonable person. As for the specific facts of *Hodari D.*, the Court held that, assuming that the officer's conduct was a "show of authority" enjoining Hodari to stop, because Hodari did not comply, he was not "seized" until he was tackled. The Court further held that the cocaine Hodari abandoned while he was running was not the fruit of a seizure.

We previously applied the *Hodari D.* analysis to affirm the circuit court's denial of a motion to suppress in *Stewart v. State*, 42 Ark. App. 28, 853 S.W.2d 286 (1993). There, police officers were on patrol when they saw Stewart standing in front of an apartment building holding a plastic bag that appeared to contain matchboxes. When Stewart walked away, the officers exited their patrol

car and told him to stop. Stewart ran, and one officer gave chase. Stewart entered an apartment and then exited without the plastic bag. The officer stopped him, and through the open door of the apartment, he saw the plastic bag. The officer retrieved the bag and discovered that the matchboxes contained crack cocaine:

Stewart argued that the officer lacked reasonable suspicion under Rule 3.1 to stop and detain him, that he was "seized" when he became aware they were chasing him, and that the cocaine was therefore the fruit of an unlawful seizure. Citing *Hodari* D., we concluded that Stewart had not been "seized" at the time he dropped the cocaine, and consequently it was unnecessary to decide whether the officers had a reasonable suspicion to stop Stewart. Further, we held that when Stewart discarded the plastic bag, he abandoned any rights he possessed under the Fourth Amendment. For this proposition, we cited *Rabun v. State*, 36 Ark. App. 237, 821 S.W.2d 62 (1991), in which we concluded that because Rabun, prior to being detained by police, discarded onto the ground a package containing contraband, it resulted in the loss of a reasonable expectation of privacy in the package under the Fourth Amendment.

The Arkansas Supreme Court also has applied the *Hodari* D. analysis under somewhat different circumstances in *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001). There, Smith fled from police, and he was not overcome by the pursuing officers until he was shot in the arm and taken into custody during an armed standoff, which was after he had made certain incriminating statements to the officers. Citing *Hodari* D., the court concluded that the incriminating statements were not the fruit of an arrest because they were made before Smith was shot and physically taken into custody.

The *Hodari D.* analysis applies here. As an initial matter, the record established that when appellant stopped his vehicle, he did not do so after a "show of authority" by the officer; rather, it was a voluntary act. In other words, there were no utterances or conduct of the officer that would have conveyed to a reasonable person that he was being ordered to restrict his movement, so appellant was not "seized" through a "show of authority." *See Rabun, supra* (citing *Chesternut* and holding that the approach by police officers in their patrol car would not have communicated to a reasonable person that he was not at liberty to ignore the presence of the police); *Williams v. State*, 26 Ark. App.

62, 760 S.W.2d 71 (1988) (holding that because Williams voluntarily stopped his vehicle, it was unnecessary to determine whether the police had probable cause to stop him). Thus, we need not consider whether the officer had the requisite grounds under either Rules 2.2(a) or 3.1 for stopping appellant's car, as the officer did not order appellant to stop the car.

■ After appellant stopped and exited his car, the officer drew his gun and ordered appellant to place his hands on the car. A reasonable person would perceive this as a "show of authority." No physical force, however, was applied to appellant at that time, and he did not submit to the officer's show of authority. Appellant was not seized until the officer physically apprehended him. The record establishes, however, that appellant discarded the contraband just prior to the seizure. By throwing the cocaine on the ground, he abandoned any reasonable expectation of privacy to the cocaine. And because he abandoned the cocaine before he was seized, the contraband was not the product of a seizure. Thus, since the cocaine was not the fruit of a seizure, we need not determine whether the officer's detention of appellant was illegal under either Rule 2.2(a) or Rule 3.1. Consequently, we affirm the circuit court's denial of appellant's motion to suppress.

Affirmed.

CRABTREE and ROAF, JJ., agree.