Martin HINOJOSA  *v.*  STATE of Arkansas

CA CR 08-234                                      288 S.W.3d 718

Court of Appeals of Arkansas
Opinion delivered October 29, 2008

*Mobley Law Firm, P.A.*, by: *Mark J. Mobley*; and *Escobar, Ramirez & Associates, P.A.*, by: *Richard Escobar*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Farhan Khan*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Martin Hinojosa entered conditional plea of guilty to the charge of possession of marijuana with intent to deliver, for which he was sentenced to 108 months in the Arkansas Department of Correction. Pursuant to Ark. R. Crim. P. 24.3, Hinojosa reserved the right to appeal the denial of his motion to suppress evidence found in his vehicle. For reversal of that decision, Hinojosa argues 1) because the traffic stop was based on a mistake of law, the trooper conducting the stop did not have probable cause to believe that a traffic violation had been committed; 2) the stop was unlawful because Arkansas Code Annotated section 27-14-716, the statutory provision that the trooper making the stop purported to be invoking, did not apply to him; and 3) even if the stop was valid, the seizure became unlawful when it was prolonged beyond the time necessary to issue a citation in the absence of reasonable suspicion that he was committing a crime. We agree that the stop was unlawful because it was conducted without probable cause, and therefore, we reverse and remand.

Because we find Hinojosa's second point dispositive of this case, we shall limit our discussion to that argument. At Hinojosa's suppression hearing, Sergeant Kyle Drown of the Arkansas State Police testified that he stopped Hinojosa's vehicle because it had an improperly displayed license plate, a violation of Arkansas Code Annotated section 27-14-716 (Repl. 2008). Sergeant Drown stated that the license-plate bracket "completely covered the state name." He asked Hinojosa if he could tell where the plate was from, and Hinojosa admitted he could not. Hinojosa also admitted that he had previously been stopped for that very violation. Pictures introduced into evidence confirmed that the bracket that secured Hinojosa's plate had a thin metal strip that covered the

outer edge of the right and left sides. That thin strip also extended over the month and year stickers, but widened to a larger strip emblazoned with the word "HONDA" that completely covered "Arizona" on the plate. However, to the left of and below the registration characters was a stylized desert landscape with prominent cacti. On the right side, below the second set of registration characters was the Arizona nickname "GRAND CANYON STATE."

On cross-examination, Sergeant Drown admitted that he had seen over 100 Arizona license plates. He acknowledged that he knew that there was a cactus symbol on the Arizona plate. Further, Sergeant Drown stated that he was "familiar" with the fact that the Grand Canyon lies in Arizona and that if he saw a license plate with "Grand Canyon State" on it, he would know that it would mean Arizona. Sergeant Drown stated that he recognized that Hinojosa's license plate was from Arizona. Further, he stated that he was familiar with Arkansas traffic regulations, but not those of Arizona.

Based on Sergeant Drown's testimony and the pictures of the license plate, the trial court denied Hinojosa's motion to suppress. Hinojosa then entered a conditional guilty plea, reserving his right to appeal.

In reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Simmons v. State*, 83 Ark. App. 87, 118 S.W.3d 136 (2003). In our review, we defer to the superior position of the trial judge to pass upon the credibility of witnesses. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

Hinojosa contends that the trial court erred in denying his motion to suppress because Sergeant Drown's traffic stop was based on a mistake of law, and therefore he did not have probable cause to believe that a traffic violation had been committed. He asserts that although the trooper purported to stop him for violating Arkansas Code Annotated section 27-14-716 (Repl. 2006), that section was not applicable to out-of-state vehicles. Instead, he argues that because a general statute must yield to a specific one, in this case Arkansas Code Annotated section 27-14-704 (Repl. 2006), which concerns motor vehicles registered outside the State of Arkansas, is the applicable law. Under section 27-14-704,

vehicles registered out-of-state are only required to have license plates that "conspicuously display the registration numbers." We find this argument persuasive.

In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *Meraz-Lopez v. State*, 92 Ark. App. 157, 211 S.W.3d 564 (2005). Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Burks v. State*, 362 Ark. 558, 559-60, 210 S.W.3d 62, 64 (2005).

■ First, we agree with Hinojosa's assertion that section 27-14-704, captioned "Motor vehicles registered in foreign states" controls over section 27-14-716, captioned "Display of license plates generally." It is axiomatic that a general statute does not apply and must yield where there is a specific statute addressing a particular subject matter. *Osborne v. State*, 94 Ark. App. 337, 230 S.W.3d 290 (2006). Under section 27-14-704, as Hinojosa notes, all that was required was that his plate "conspicuously display the registration numbers."

■ Having decided what the applicable law is in this case, we next consider the evidence of its violation and find it lacking. It is not disputed that the registration number of Hinojosa's vehicle was conspicuously displayed. Furthermore, Sergeant Drown testified that he had seen more than 100 Arizona license plates, and he admitted that he recognized the license plate on Hinojosa's vehicle as an Arizona license plate. Accordingly, there were no facts or circumstances that would permit a person of reasonable caution to believe that an offense had been committed. We therefore reverse the trial court's denial of Hinojosa's motion to suppress and remand for further proceedings consistent with this opinion.

■ In deciding this case today, we are mindful that in *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998), the supreme court rejected a mistake-of-law argument. However, we believe that *Travis* is distinguishable. In *Travis*, the appellant was stopped based on a deputy's erroneous belief that Texas law required an expiration sticker to be displayed on the license plate, in the same manner as is required by Arkansas law. In the instant case, only Arkansas law was at issue, and there clearly was no violation of the applicable Arkansas statute. Pursuant to Arkansas Code Annotated

section 12-8-101 (Repl. 2003), the Department of the Arkansas State Police was created for the express purpose of enforcing our motor vehicle laws. We hold that it is not reasonable for a trooper to stop a vehicle because he or she was not thoroughly familiar with this discrete body of law.

Reversed and remanded.

HUNT, J., agrees,

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. Sergeant Kyle Drown of the Arkansas State Police invoked Ark. Code Ann. § 27-14-716 (Repl. 2008) as the basis for his traffic stop in this case. I join the decision to reverse appellant's conviction and agree that § 27-14-716 does not govern the display of license plates issued to out-of-state vehicles. As such, there was no reasonable basis for the traffic stop that predicated appellant's eventual arrest, in view of the facts in this case. Moreover, I issue this concurring opinion to again condemn racial profiling by law-enforcement officials.[1]

The State argues that the relevant inquiry is whether Drown had probable cause to believe that appellant was committing a traffic offense at the time of the initial stop. While that is the relevant inquiry, the suspicion required to effect a lawful traffic stop must first be reasonable. See Ark. R. Crim. P. 3.1; Stewart v. State, 332 Ark. 138, 964 S.W.2d 793 (1998). A "reasonable suspicion" is a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. See Hammons v. State, 327 Ark. 520, 940 S.W.2d 424 (1997). A police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing of a citation or warning. See Sims v. State, 356 Ark. 507, 157 S.W.3d 530 (2004). However, in order to continue the detention once the legitimate purpose of the traffic stop ends, an officer must have reasonable suspicion that a person is committing, has committed, or is about to commit a felony or a dangerous misdemeanor. Id. Mere nervousness cannot constitute reasonable suspicion of criminal activity and grounds for detention. Id.

---

[1] See also my dissenting opinion in Chon Johnson v. State, 70 Ark. App. 343, 19 S.W.3d 66 (2000).

Thus, even if an officer's suspicion is misplaced, the traffic stop must not be unreasonably prolonged beyond the time required to issue a citation or to complete the purpose of the stop. *Id.* Otherwise, law enforcement officers would be authorized to stop motorists based on pretextual reasons, and to detain them alongside Arkansas roadways at will.

This case appears to present a classic case of racial profiling, which is prohibited under Arkansas law. *See* Ark. Code Ann. § 12-12-1401(a) (Supp. 2008). "Racial profiling" is defined as "the practice of a law enforcement officer's relying to any degree on race, ethnicity, national origin, or religion in selecting which individuals to subject to routine investigatory activities or in deciding upon the scope and substance of law enforcement activity following the initial routine investigatory activity." Ark. Code Ann. § 12-12-1401(a) (Repl. 2003). This means that while an officer generally may stop a suspect whom the officer legitimately believes has violated Arkansas law, or generally may detain a suspect for the completion of routine tasks that are legitimately related to the stop, the officer may not stop the suspect or prolong the detention based purely on the suspect's race, ethnicity, national origin, or religion.

The stop in this case was pretextual, and appears to have been based on racial profiling, as Drown admitted that he knew that appellant's vehicle had a license plate with the "Grand Canyon" logo, a cactus symbol, and a desert landscape. Accordingly, there was no reason for Drown to believe that the vehicle he stopped was registered in Arkansas so as to be subject to § 27-14-716 in the first place. Drown testified at the suppression hearing that he stopped appellant's vehicle because its license plate was mounted in a bracket that "completely covered the state which the license was out of." Even if the state name was covered, the license plate plainly displayed a cactus symbol and a depiction of a desert. Drown admitted that he associated those features with the state of Arizona when he made the traffic stop.

The license plate also depicted the "Grand Canyon State" motto. Drown, a college graduate, further admitted that when he saw a license plate bearing the "Grand Canyon State" motto, he understood that the plate was from Arizona because there is only one Grand Canyon, which is located in Arizona. Hence, he had no reason to believe that he was doing anything other than stopping a vehicle that bore an Arizona license plate.

Moreover, appellant was unlawfully detained when the stop was prolonged beyond the time required to issue a citation for the infraction that Drown believed had occurred. The act of asking appellant whether he had been arrested is suspicious, as there was no reason to inquire about appellant's arrest history merely because Drown allegedly could not identify where appellant's vehicle was registered. Even if Drown mistakenly believed that Arkansas law governs how license plates are to be displayed on vehicles registered in Arizona, once he verified appellant's identity via appellant's driver's license and vehicle registration, there was nothing more required but to issue a citation and release appellant to continue on his journey.

If the reason for stopping appellant was to verify his vehicle registration, then Drown could have asked for appellant's driver's license and registration at the outset of the stop, then compared the registration to the license plate. Instead, *before* he verified that information, Drown prolonged the stop by questioning where appellant was going and whether he had any prior arrests. Drown identified no reason for believing that he suspected appellant to have been engaged in unlawful conduct other than having an improperly displayed license plate. This assertion is belied by Drown's admission that he knew the plate was an Arizona plate. As such, Drown's inquiries about where appellant was going and about appellant's arrest record were inconsistent with the purported purpose of the stop. Thus, it appears that Drown subjected appellant to a roadside interrogation because Drown suspected that appellant fit the profile of someone who might have an arrest record. The only objective basis by which Drown could have formed that suspicion was appellant's Spanish surname and ethnicity, neither of which can provide reasonable cause to detain a motorist who has been stopped for an alleged traffic violation.

Interstate 40 is a major east-west traffic corridor for the southern part of the United States on which vehicles from many states travel every day. The people who operate those vehicles are not more likely to have an arrest record merely because they are from places other than Arkansas. Driving a vehicle registered in another state is not a crime in Arkansas. Driving a vehicle that is registered in another state while being Hispanic is not a crime in Arkansas. There is certainly no legitimate reason for people with Spanish surnames from Arizona or anywhere else to be suspected of criminal activity merely because they operate automobiles on Arkansas highways, wherever the automobiles may be registered.

Similarly, no law prohibits a motorist from becoming apprehensive when he is subjected to a roadside interrogation by an armed law-enforcement agent who stops his vehicle because it bears a license plate from another state. Nor is there any law that prohibits a motorist from becoming apprehensive when the armed law-enforcement agent interrogates the motorist about his arrest record without any apparent reason other than the fact that the motorist is from another state. It is not at all surprising that motorists with Spanish surnames who operate vehicles registered in other states become nervous when law-enforcement officials are permitted to engage in pretextual traffic stops such as the stop in this case.

On these facts, I join the majority opinion because § 27-14-716 did not provide reasonable cause to stop appellant's vehicle. Nonetheless, I would also reverse because the stop and detention appears to have been improperly based on racial profiling.