2009 Ark. 301

**Martin HINOJOSA, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1336.**

Supreme Court of Arkansas.

May 21, 2009.

Mobley Law Firm, P.A., by: Mark J. Mobley; Russellville, and Escobar, Ramirez & Associates, P.A., by: Richard Escobar, Tampa, FL, for appellant.

Dustin McDaniel, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This court granted the State's petition for review of the decision in *Hinojosa v. State,* 103 Ark.App. 312, 288 S.W.3d 718 (2008), in which the court of appeals reversed and remanded appellant Hinojosa's conviction for possession of marijuana with

intent to deliver. At issue is whether the circuit court erred by denying Hinojosa's motion to suppress statements and evidence obtained following a traffic stop. Hinojosa argues that the initial stop was unlawful, and, therefore, his statements and the evidence obtained after the stop were inadmissible under the "fruit of the poisonous tree doctrine" established in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We disagree and affirm the circuit court.

On January 27, 2007, Sergeant Kyle Drown of the Arkansas State Police initiated a traffic stop of Hinojosa's truck in Pope County after observing that the vehicle's license plate cover obscured the name of the issuing foreign state.[1] During the traffic stop, Drown eventually asked Hinojosa if he had anything illegal in his vehicle. Hinojosa responded that there was approximately three hundred pounds of marijuana in the truck. After a canine sniff confirmed presence of the marijuana, Hinojosa was charged with possession of a controlled substance with an intent to deliver under Ark.Code Ann. § 5-64-401.

Hinojosa filed a motion to suppress, contending that his statements and the physical evidence were illegally seized as a result of an unlawful traffic stop. Sergeant Drown testified at the suppression hearing that he stopped Hinojosa because the license plate frame on his truck obscured the identification of the plate's issuing state in violation of Ark.Code Ann. § 27-14-716.[2] Hinojosa asserted that the license plate cover did not violate Arkansas or Arizona law, and that Sergeant Drown's mistake of law rendered the traffic stop without probable cause and, therefore, illegal. The circuit court denied the motion to suppress in an order issued on November 5, 2007, and filed a letter containing its findings regarding the suppression motion the same day. Quoting from *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998) and *Burris v. State*, 330 Ark. 66, 73, 954 S.W.2d 209, 213 (1997), the trial court stated in the letter of findings that the supreme court had previously held that a law enforcement officer's mistake of law does not negate probable cause; instead, "all that is required is that the officer had probable cause to believe that a traffic violation had occurred." Hinojosa entered a conditional plea of guilty, reserving his right to appeal the suppression ruling under Ark. R.Crim. P. 24.3(b), and filed a timely notice of appeal.

Upon review, the court of appeals first determined that the applicable law in the case was Ark.Code Ann. § 27-14-704, rather than Ark.Code Ann. § 27-14-716, which Sergeant Drown testified provided the basis for his traffic stop of Hinojosa. The court of appeals found that § 27-14-704 only requires that a motor vehicle registered in another state must "conspicuously display the registration numbers," and stated that it was undisputed "that the registration number of Hinojosa's vehicle was conspicuously displayed." *Hinojosa*, 103 Ark.App. at 315, 288 S.W.3d at 720-21. Noting that Sergeant Drown testified that "he had seen more than 100 Arizona license plates, and admitted that he recognized the license plate on Hinojosa's vehicle as an Arizona license plate," the court

**1.** A photograph of the license plate frame was admitted into evidence at trial, showing a thin metal frame affixed to the license plate. The frame widened over the top portion of the license plate, and this part of the frame, with the word "HONDA" printed on it, completely obscured "Arizona." The frame did not obscure the registration numbers on the license plate or the expiration stickers.

**2.** Violation of § 27-14-716 is a misdemeanor, punishable by up to $500 in fines and/or up to six months' imprisonment. *See* Ark.Code Ann. § 27-14-301 (Repl.2008).

of appeals stated that there "were no facts or circumstances that would permit a person of reasonable caution to believe that an offense had been committed." *Id.* Accordingly, the court of appeals reversed the circuit court, holding that the traffic stop was unlawful because it was conducted without probable cause.[3]

When this court grants a petition for review of a decision by the court of appeals, it reviews the case as though it had originally been filed with this court. *Brookshire v. Adcock,* 2009 Ark. 207, 307 S.W.3d 22. In reviewing a circuit court's denial of a motion to suppress evidence, the appellate court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004). This court will reverse the circuit court only if the ruling is clearly against the preponderance of the evidence. *Id.* Additionally, this court defers to the circuit court's superior position to judge the credibility of witnesses. *Id.*

Hinojosa brings three points on appeal, arguing that the circuit court erred in denying his motion to suppress for the following reasons: (1) Sergeant Drown did not have probable cause to stop Hinojosa because § 27–14–716 does not prohibit the

obscuring of the state name on a license plate; (2) the traffic stop was unlawful because it was based on a mistake of law that § 27–14–716 was applicable to Hinojosa as a nonresident; and (3) even if the initial stop was valid, the subsequent seizure "became unlawful when it was prolonged beyond the time necessary to issue a citation for the alleged traffic infraction in the absence of reasonable suspicion that [he] was committing a crime."

Hinojosa first argues that Sergeant Drown lacked probable cause to stop his vehicle because the stop was based on a mistake of Arkansas law. Specifically, Hinojosa asserts that Sergeant Drown stopped him based on the erroneous belief that Hinojosa's license plate frame violated § 27–14–716 because a frame placed over the license plate obscured the name of the plate's issuing state—Arizona. Hinojosa contends that § 27–14–716(b), involving the legibility of license plates, does not contain any reference to the visibility or legibility of the state name. He also argues that § 27–14–716(c), which contains a separate prohibition against placing any type of cover over a license plate that makes the plate more difficult to read, "prohibits only license plate covers that cover the registration number in such a way as to make it more difficult to read."

A police officer must have probable cause to believe that a vehicle has violated a traffic law before making a valid

---

**3.** The court of appeals concluded the opinion as follows:

> In deciding this case today, we are mindful that in *Travis v. State,* 331 Ark. 7, 959 S.W.2d 32 (1998), the supreme court rejected a mistake-of-law argument. However, we believe that *Travis* is distinguishable. In *Travis,* the appellant was stopped based on a deputy's erroneous belief that Texas law required an expiration sticker to be displayed on the license plate, in the same manner as is required by Arkansas law. In

> the instant case, only Arkansas law was at issue, and there clearly was no violation of the applicable statute. Pursuant to Arkansas Code Annotated section 12–8–101 (Repl. 2003), the Department of the Arkansas State Police was created for the express purpose of enforcing our motor vehicle laws. We hold that it is not reasonable for a trooper to stop a vehicle because he or she was not thoroughly familiar with this discrete body of law.

> 103 Ark.App. at 315–16, 288 S.W.3d at 721.

stop. *Sims, supra.* Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Burks v. State,* 362 Ark. 558, 210 S.W.3d 62 (2005). In assessing the existence of probable cause, this court's review is liberal rather than strict. *Laime v. State,* 347 Ark. 142, 60 S.W.3d 464 (2001). In the context of traffic stops, this court has "repeatedly held that degree of proof sufficient to sustain a finding of probable cause is less than required to sustain a conviction." *Burris v. State,* 330 Ark. 66, 73, 954 S.W.2d 209, 213 (1997). Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation which the officer believed to have occurred. *Id.*

The proper inquiry relevant to Hinojosa's first point is whether there were "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Burks, supra.* Sergeant Drown testified that he stopped Hinojosa's vehicle because he believed that the license plate frame obscuring the name of the issuing state violated § 27–14–716. Section 27–14–716, originally adopted as part of Act 142 of 1949, provides as follows:

(a)(1) License plates issued for a motor vehicle other than a motorcycle shall be attached thereto, one (1) in the front and the other in the rear.

(2)(A) When one (1) plate is issued, it shall be attached to the rear.

(B) License plates for trucks of one (1) ton capacity or larger may be displayed either on the front or rear of the vehicle.

(C) The license plate issued for a motorcycle required to be registered under this chapter shall be attached to the rear thereof.

(b) Every license plate shall, at all times, be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches (12″) from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible.

(c) Placing any type of cover over a license plate which makes the license plate more difficult to read or which reduces the reflective properties of the license plate is prohibited.

Section 27–14–716(b) requires that "every license plate shall, at all times, be ... clearly visible and shall be maintained free from foreign materials," and § 27–14–716(c) prohibits "[p]lacing any type of cover over a license plate which makes the license plate more difficult to read." The language in § 27–14–716 prohibits obscuring the license "plate." Nothing in the language of the statute restricts its applicability to the registration numbers alone, as Hinojosa contends in his first point on appeal. It is undisputed that Hinojosa's license plate frame obscured "Arizona" from the license plate; therefore, the license plate was not "clearly visible" or "clearly legible" as required by § 27–14–716(b), and the frame made "the license *plate* more difficult to read" as prohibited by § 27–14–716(c). (Emphasis added.) Accordingly, Sergeant Drown did not lack probable cause to stop Hinojosa's vehicle under § 27–14–716 on this basis. *See United States v. Orduna–Martinez,* 561 F.3d 1134 (10th Cir.2009) (although Kansas statute did not specifically require

registration decals to be legible, the statute's general requirement that license plates be "clearly visible" encompassed all parts of the license plate, including the decals); *Nelson v. State*, 247 Ga.App. 455, 544 S.E.2d 189, 190 (Ga.Ct.App.2001) (because the statute did not "specify that only certain portions of the tag must not be obscured" and "[t]he overarching duty of the driver is to keep the license tag legible at all times," the court held that "no portion of the license tag may be covered with any material so as to render the license information illegible," including "the name of the state issuing the license"); *State v. Hayes*, 8 Kan.App.2d 531, 660 P.2d 1387, 1389 (Kan.Ct.App.1983) (because "all of the tag must be legible, including the state name, which may be the most important information on the tag," an officer had probable cause to initiate a stop where the name of the foreign state was obscured, even though the officer could read the words "Hoosier State" on the plate).

For his second point for reversal, Hinojosa argues that, even if § 27–14–716 does prohibit a license plate frame that obscures a state name, the statute is inapplicable to him because his vehicle was registered in another state. Hinojosa contends that as a nonresident, the statute applicable to his vehicle was § 27–14–704 rather than § 27–14–716. Section 27–14–704, originally adopted in 1931 and titled "Vehicles of nonresidents," states as follows:

(a) Any motor vehicle or motorcycle belonging to any person who is a nonresident of this state who has registered the motor vehicle or motorcycle in *and who has complied with all the laws of the state, territory, District of Columbia, or any province or territory of Canada in which the owner resides with respect to the registration of motor vehicles and the display of registration numbers and who shall conspicuously display the reg-*

*istration number as required may be operated in this state as follows*:

(1) If the motor vehicle is operated for the sole purpose of marketing farm products raised exclusively by the owner or other growers of the products associated with the owner in the raising of the farm products;

(2) A privately owned and duly registered motor vehicle not operated for hire but for the purpose of going to and from the owner's place of regular employment and the making of trips for the purchasing of goods, wares, and merchandise if the owner lives outside of this state;

(3)(A) Any motor vehicle operated by a nonresident only making an occasional trip into this state shall have the right to make an occasional trip without the payment of any motor vehicle license fee to this state, if the motor vehicle is not operated for hire.

(B) The Director of the Department of Finance and Administration may issue temporary permits without payment of license fees for motor vehicles operated for hire by a nonresident into and across the highways of this state when the vehicles are operated upon charters for casual, irregular, occasional, and nonscheduled sightseeing trips; and

(4) The director is authorized and empowered to enter into any agreement or issue any permit for the operation of any motor vehicles upon the highways of this state without payment of license fees when the vehicles are operated under and by the supervision of the proper authorities of the United States Army, Air Force, Navy, or Marine Corps during any period of emergency.

(b) The provisions of this section shall be operative as to a vehicle owned by a nonresident of this state only to the extent that under the laws of the state,

territory, District of Columbia, or any province or territory of Canada, or other place of residence of the nonresident owner, like exemptions are granted to vehicles registered under the laws of, and owned by, residents of this state. (Emphasis added.) Hinojosa asserts that under § 27–14–704 he was only required to ensure that his vehicle's registration numbers were conspicuously displayed as required by Arizona law. Because his vehicle's registration number was visible despite the license plate cover, Hinojosa argues that he was in compliance with § 27–14–704; therefore, Sergeant Drown's mistake of law rendered the traffic stop an unreasonable violation of the Fourth Amendment.

In response, the State argues that this court held in *Travis v. State, supra,* that an officer's mistake of law does not negate probable cause. In *Travis,* a deputy sheriff stopped a truck with a Texas license plate in the erroneous belief that Texas law required the display of an expiration sticker on the license plate. After making the traffic stop, the deputy discovered that the driver of the truck had a suspended driver's license, and that the owner/passenger also had a suspended driver's license, as well as a prior felony conviction. After calling a tow truck to remove the vehicle from the highway, the deputy opened one of the vehicle's doors in order to roll up a window and observed a rifle in plain view. The deputy arrested the vehicle's owner for being a felon in possession of a firearm.

The appellant in *Travis* argued that the circuit court erred in denying his motion to suppress the rifle as evidence because "the deputy's understanding of Texas licensing requirements was erroneous," and, therefore, "there was no 'probable cause,' or even 'reasonable suspicion,' to make the stop." *Travis,* 331 Ark. at 9, 959 S.W.2d

at 34. This court rejected that argument, stating that "[a]lthough the deputy was erroneous, the question of whether an officer had probable cause to make a traffic stop does not depend upon whether the defendant is actually guilty of the violation that was the basis of the stop." *Id.* at 10, 959 S.W.2d at 34. Instead, "[w]hether the defendant is actually guilty of the traffic violation is for a jury or court to decide, not an officer on the scene." *Id.* (citing *Burris v. State,* 330 Ark. 66, 954 S.W.2d 209 (1997)).

Although the parties disagree as to whether the holding in *Travis* extends to a mistake of Arkansas law, it is unnecessary to address this issue here; § 27–14–716 applies to all vehicles traveling on Arkansas roads based on this court's decision in *Burris v. State, supra,* and the express terms of the statute.

In *Burris,* an officer of the Arkansas State Highway Patrol testified at a suppression hearing that he stopped a vehicle with a Florida license plate because the license plate was improperly displayed under § 27–14–716, and because the vehicle had a broken brake light. Upon review, this court affirmed the circuit court's order denying the suppression motion, holding that the officer had probable cause to believe there was a violation of § 27–14–716, because the Florida license plate "was fastened to the trailer in such a fashion that the license plate flipped upwards in the wind and because the last digits of the plate were obscured by the corner of the trailer." 330 Ark. at 72, 954 S.W.2d at 212. Thus, this court has previously applied the legibility requirements of § 27–14–716 to nonresidents as well as residents.

Additionally, the express terms of the statute indicate that the General Assembly intended for the pertinent provisions of § 27–14–716(b) and (c) to apply to resi-

dents and nonresidents. Section 27–14–716(b) provides that

> [e ]*very* license plate shall, at all times, be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches (12″) from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be *clearly legible.*

(Emphasis added.) The plain language of § 27–14–716(b) requiring that "[e]very license plate shall, at all times ... be clearly legible" does not limit its application to residents of Arkansas. *See United States v. DeGasso,* 369 F.3d 1139, 1147 (10th Cir.2004) (construing a similar section of an Oklahoma statute and holding that "[b]y its terms, this portion of the statute applies to any vehicle equipped with a license plate, whether or not it is from Oklahoma. This accords with the common-sense proposition that police officers have no less need to identity out-of-state vehicles than they have to identify those registered in Oklahoma."); *State v. Davis,* 283 Ga.App. 200, 641 S.E.2d 205, 206 (2007) ("[t]rial court erred by ruling that [similar Georgia statutory provisions] did not apply to the out-of-state license plate. Although certain portions of [the Georgia statute] apply only to vehicles registered in Georgia, the [license plate legibility] portions of the statute apply to any vehicle whether registered in Georgia or out of state."); *State v. Hayes,* 660 P.2d at 1389 (holding that "an illegible or obscured vehicle tag is a violation of [similar Kansas statute] even if the vehicle is duly licensed in another state" and that separate Kansas statute addressing the vehicles of nonresidents "does not grant total exemption from Kansas law.... Out-of-state cars on Kansas highways are subject to the same po-

lice imperatives as local vehicles."). Additionally, the General Assembly amended § 27–14–716 in 2001 to add subsection (c), prohibiting covers that make license plates more difficult to read. Act of Apr. 5, 2001, No. 1378, 2001 Ark. Acts 5178. There is no language in subsection (c) that limits its application to residents of Arkansas.

Although Hinojosa asserts that § 27–14–704 is the more specific statute and is "the only statute applicable to the display of license plates on vehicles of nonresidents," our rules of statutory construction provide that statutes relating to the same subject are "in pari materia" and should be read in a harmonious manner if possible. *Mays v. Cole,* 374 Ark. 532, 289 S.W.3d 1 (2008). Unless two statutes relating to the same subject are in conflict and cannot be reconciled, they are to be read together, and each is to be given its intended effect. *Kan. City S. Ry. Co. v. Pledger,* 301 Ark. 564, 785 S.W.2d 462 (1990). The intended purpose of the relevant portions of each statute is similar: the legible or conspicuous display of registration information. Notably, Sergeant Drown testified that it is important that the name of the license plate's issuing state be clearly visible for law enforcement officers to identify vehicles that are the subject of "NCIC BOLOS" (National Crime Information Center "Be on lookout for" bulletins), and to facilitate citizens' identification of license plates in order to report reckless or intoxicated drivers. In our view, the language of the two statutes does not conflict such that one must take precedence over the other. To hold otherwise would result in the nonsensical proposition that law enforcement officers have less need to identify out-of-state vehicles than they have to identify vehicles registered in Arkansas. This court does not engage in statutory interpretations that defy common sense or produce absurd re-

sults. *See, e.g., Shipley, Inc. v. Long,* 359 Ark. 208, 195 S.W.3d 911 (2004). Thus, we conclude that the license plate display requirements of § 27–14–716 apply to all vehicles traveling on Arkansas roads—resident and nonresident alike. Accordingly, Sergeant Drown had probable cause to stop Hinojosa for violation of § 27–14–716.

For his third point on appeal, Hinojosa argues that, even if the initial traffic stop was valid, "it became unlawful because it was prolonged beyond the time necessary to issue a citation for the alleged traffic violation in the absence of reasonable suspicion that the Appellant was committing a crime." Neither the circuit court's order denying the motion to suppress, nor the court's letter of findings of fact filed the same day, addresses Hinojosa's third point for reversal. An appellant must obtain a ruling on his argument to preserve the matter for this court's review. *Wallace v. State,* 2009 Ark. 90, at ¶–14–15, 302 S.W.3d 580, 589. Accordingly, we cannot reach the merits of Hinojosa's third point on appeal.

Circuit court affirmed; court of appeals reversed.