The Honorable Linda Collins-Smith State Representative Post Office Box 90 Pocahontas, Arkansas 72455-0090
Dear Representative Collins-Smith:
You have asked for my opinion on whether a city may charge a franchise fee to a county public facilities board that operates a waterworks facility. I have paraphrased your question as follows:
 An entity known as "The Cherokee Village Waterworks Facilities Board of Sharp County" provides water to the City of Cherokee Village. Arkansas Code Annotated section 14-200-101 permits cities to charge "public utilities" a franchise fee for the privilege of using the city's rights of way. Does this entity qualify as a "public utility," as that term is defined in section 14-200-101, such that the City could charge it a franchise fee?
RESPONSE
Unfortunately, I cannot provide a definitive answer to your question. While there are good reasons to think that the answer to your question is "yes," there are also good reasons to think that the answer is "no." All I can do is explain those reasons because, in my view, neither set of reasons is strong enough to clearly outweigh the other. Legislative clarification is warranted.
DISCUSSION
The scenario you describe appears to be very rare, if not unique. In the early 1980s, Sharp County, Arkansas formed a waterworks facilities board to serve the *Page 2 
area that is now incorporated as the City of Cherokee Village.[1]
Apparently, that county waterworks facility has continued to serve the area after it incorporated in the late 1990s and on up to the present. This is an unusual scenario because, typically, cities are served either by their own municipal water utility or by a privately owned[2] public utility that provides the water.
A "franchise fee" — which is a fee the City wishes to charge — is a fee assessed by cities against a "public utility" for the privilege of using the city's streets and other rights of way.[3] In A.C.A. § 14-200-101 (Supp. 2011), the General Assembly gave cities the authority to charge franchise fees to a "public utility": "Acting by ordinance or resolution of its council . . . every city . . . shall have jurisdiction to . . . determine the terms and conditions upon which a public utility may be permitted to occupy the streets . . . or other public places within the municipality, including . . . [a] reasonable franchise fee."[4]
Your question is whether the county water facilities board ("Board") counts as a "public utility" under this statute, so that the City may charge it a franchise fee. The statute defines "public utility" by giving two general definitions and then providing three exceptions from those definitions. As for the general definitions, the statute says, first, that "public utility" means "any electric, gas, sewer, or telephone company" and, second, that it means "any company providing similar services."
For purposes of this opinion, we can make three observations about these general definitions. First, in order to know whether the Board — or any other entity — counts as a "public utility," one needs to know what the statute means by the undefined term "company." Did the legislature intend this term to connote "corporation" or "commercial" or "privately owned"? Or was the term intended to mean just any kind of association or organization? Second, is water one of the *Page 3 
"similar services" referenced in the definition? This issue arises because the statute does not enumerate "water" alongside the other kinds of utility (electric, gas, sewer, etc.) when it enumerates the kinds of services that a "company" must provide in order to qualify as a "public utility."
These two observations lead to the third: the following is a necessary (but insufficient) condition for the Board to count as a "public utility": the Board must be a "company" under subsection 14-200-101(a).
So the threshold question is whether there is good reason to think that the Board is (or is not) a "company" under this statute. While section 14-200-101 does not define "company," it is defined in the statutes regulating the Arkansas Public Service Commission ("PSC"). Indeed, the definition of the wider term "public utility" is critical to the mission of the PSC. Given the similar subject matter, a review of the PSC statutes might offer insight into what the legislature intended with regard to both "public utility" and "company" as those terms appear in subsection 14-200-101(a).
One PSC statute, A.C.A. § 23-2-302, attempts to define "company" in the context of the PSC's jurisdiction over "public utilities" that provide water to municipalities:
 (a) The jurisdiction of the commission shall extend to and include:
 (1)(A) All matters pertaining to the regulation and operation of all:
 * * * (xvi) Water companies furnishing water within municipalities for municipal, domestic, or industrial use.
 * * * (b) For the purpose of this act . . . every person, firm, association, company, partnership, corporation, or other organizations engaged in the operation of any public utility above indicated shall be deemed to be a company
within the meaning of this act.[5] *Page 4 
Unfortunately, this definition is not entirely helpful because the legislature has used the word "company" in the definition of that very word, which makes it difficult to determine legislative intent. Nevertheless, this quasi-definition sets out the following two-part equation for what constitutes a "company":
 "Company"' (a person, firm, association, company, partnership, corporation, or other organization) + (operating as a public utility)
The second part of the equation — "operating as a public utility" — does, however, offer some insight into what the legislature meant by a "company." This is because the term "public utility" is defined in great detail. And it is defined in such a way that no water facilities owned by a city or town count as a "public utility":
 As used in this act, unless the context requires otherwise:
 * * * (9)(A) "Public Utility" includes persons and corporations . . . owning or operating in this state equipment or facilities for:
 * * * (ii) Diverting, developing, pumping, impounding, distributing, or furnishing water to or for the public for compensation. However, nothing in this subdivision shall be construed to include water facilities and equipment of cities and towns in the definition of public utility.
For purposes of its jurisdiction, the PSC appears to interpret this bolded section to exclude every publicly-owned public utility that provides water from the definition of a "public utility."[6]
Accordingly, for purposes of the PSC, the Board is not considered a "public utility," which means that, under the equation given above, the Board is also not a "company." *Page 5 
The PSC's interpretation of "public utility" and "company" as excluding all publicly-owned public utilities is instructive for us when analyzing section 14-200-101 because the legislature linked these two statutes in subsection 14-200-101(c). There, the legislature permitted a "public utility" that was assessed a franchise fee to appeal that assessment to the PSC. Accordingly, because both sets of statutes relate to a similar subject matter — namely, identifying what entities count as "public utilities" — we should try to read the two sets of statutes together, if possible.[7]
What all this tends to show is (1) that the terms "public utility" and "company," as used in the PSC and franchise-fee contexts, are related; and (2) that, given that relationship, a franchisee fee cannot be assessed against a publicly-owned public utility.[8] If the foregoing were all we had to go on, the answer to your question would be "No, the City probably cannot charge the Board a franchise fee."
But there is a different way of reading subsection 14-200-101(a) that yields a different answer. This reading is grounded in the exceptions to subsection 14-200-101(a)'s definition of "public utility." After giving the two general definitions of a "public utility" for purposes of the franchise fee, subsection 14-200-101(a) lists three exceptions to the definition: "except a company excluded from the definition of `public utility' under § 23-1-101(9)(B)(ii), a consolidated utility district under § 14-217-101 et seq., and a water or light commission under § 14-201-101 et seq." If the foregoing analysis of the seeming connection between the PSC statutes and the franchise-fee statute were correct, then there would be no need for these exceptions. The first exception listed above references an entity that is already excluded from the definition of a "public utility" in the PSC statutes at subsection 23-1-101(9)(B)(ii). And the second two exceptions are for publicly-owned public utilities, which means that they would not count as "public utilities" under the PSC *Page 6 
statutes, at least to extent that they provide water services. So the fact that the legislature specifically excluded these kinds of entities suggests that "public utility," as used in the franchise-fee context, is broader than the term when used in the PSC context.
Under this analysis, the nature of the exceptions give us some reason to think that, in the franchise-fee context, "public utility" includes publicly-owned public utilities. If that is the case, then the Board would be included in the term "public utility" and, therefore, subject to the City's franchise fee.
In summary, there are two plausible, but opposed, answers to your question. The two views diverge on the question whether the term "public utility," as that term is used in the PSC statutes and in the franchise-fee statutes, is identical. If the terms are identical, then the Board cannot be charged a fee. If the terms are not identical — or more specifically, if that term is broader in the franchise-fee context — then the Board probably can be charged.
In my opinion, the arguments for and against each of these views are fairly evenly matched. Thus, I cannot conclusively opine on your question. Legislative clarification is warranted.
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN MCDANIEL
Attorney General
[1] The authority governing such boards is found at A.C.A. §§ 14-137-101 to -123 (Repl. 1998 Supp. 2011).
[2] I distinguish a "privately-owned" public utility from a "publicly-owned" public utility. By the latter, I mean one that is owned by a governmental entity.
[3] See City of Little Rock v. AT T Communications of theSouthwest, Inc.,318 Ark. 616, 621, 888 S.W.2d 290, 293 (1994).
[4] A.C.A. § 14-200-101(b)(1) (Supp. 2011).
[5] A.C.A. § 23-2-302 (Repl. 2002) (emphasis added).
[6] The PSC's website reflects the Commission's view that it lacks jurisdiction over publicly-owned public utilities: "The Commission does not regulate municipal utilities of a city, a town, an improvement district or any other public or quasi-public corporation which is created or organized under the Constitution or laws of the State of Arkansas." Arkansas Public Service Commission,http://www.apscservices.info/g_w.asp
(last visited October 5, 2011).
[7] This is the statutory canon requiring statutes be read together when they are in pari materia. See, e.g., Hinjosa v.State, 2009 Ark. 301, 13, 319 S.W.3d 258, 265.
[8] One of my predecessors opined that a city could charge a franchise fee to its own publicly-owned water utility. Op. Att'y Gen. 2003-172. This conclusion was reached because, according to my predecessor, "water services" are a "similar service" as contemplated by subsection 14-200-101(a); and, under a dictionary-definition of "company," a publicly-owned entity is a "company." However one might evaluate these two arguments, the conclusion they lead to is, in my view, dubious. The purpose of the franchise fee is to charge an entity for the privilege of using the city's rights of way. It makes little sense to say that a city can charge itself for the privilege of using its own rights of way.