Cite as 2026 Ark. App. 107

# ARKANSAS COURT OF APPEALS
## DIVISIONS II, III & IV
### No. CR-25-210

| | |
|---|---|
| JOHN CLAYPOOLE<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered February 18, 2026<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17CR-24-339]<br><br>HONORABLE CANDICE A. SETTLE, JUDGE<br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

John Claypoole appeals the sentencing order entered by the Crawford County Circuit Court after a jury found him guilty of possession of methamphetamine, more than 10 grams but less than 200 grams; possession of drug paraphernalia; and improper lane change.[1] The circuit court sentenced Claypoole to five years' imprisonment and a fine of $5,000 for the possession-of-methamphetamine conviction; a one-year suspended sentence for the possession-of-drug-paraphernalia conviction, to run concurrently with the possession-of-methamphetamine conviction; and a $25 fine for the improper-lane-change conviction. Claypoole's sole argument on appeal is that the circuit court erred in denying his motion to

---

[1]Claypoole was also charged with driving on a suspended license, but the sentencing order reflects this charge was dismissed.

suppress evidence; specifically, he contends that there was a lack of probable cause to stop his vehicle. We affirm.

On July 2, 2024, Officer Colton Gregory with the Alma Police Department pulled Claypoole over after seeing him make an improper lane change on Interstate 40. Claypoole consented to the search of his vehicle, which revealed over ten grams of methamphetamine and a glass methamphetamine pipe. Claypoole moved to suppress the evidence of the drugs and drug paraphernalia, alleging that the officer lacked probable cause to make the stop.

At the December 17 suppression hearing, Officer Gregory testified that he was traveling behind Claypoole while patrolling Interstate 40 when he saw Claypoole make a lane change to the "left inside lane" without first signaling for one-hundred feet. The officer pointed out exactly when the violation occurred while his dash-cam video was played for the court. Also, in the video, the officer tells Claypoole several times that he was pulled over for failing to signal one hundred feet before changing lanes. Officer Gregory testified that the improper lane change gave him probable cause to stop Claypoole's vehicle, which ultimately led to the discovery of the drugs and drug paraphernalia.

Officer Gregory also stated at the suppression hearing that there was a tractor trailer that merged onto the interstate in front of Claypoole and a gray sedan that swerved into Claypoole's lane of traffic before it merged onto the interstate behind Claypoole. Officer Gregory testified that Claypoole's failure to signal did not affect "the movement of any vehicles in any way."

On December 31, the court entered an order denying the motion to suppress. The case proceeded to a jury trial where Claypoole was found guilty as stated above. This appeal followed.

We review the denial of a motion to suppress de novo based on the totality of the circumstances, reviewing findings of historical facts for clear error, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings, and determining whether those facts give rise to probable cause. *Murchison v. State*, 2014 Ark. App. 379, at 4. We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.* We must give deference to the circuit court's superior opportunity to determine witnesses' credibility and make findings of fact. *Small v. State*, 2018 Ark. App. 80, at 7–8, 543 S.W.3d 516, 521.

A police officer must have probable cause to believe that a vehicle has violated a traffic law before making a valid stop. *Hinojosa v. State*, 2009 Ark. 301, at 5, 319 S.W.3d 258, 261–62. Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Id.* at 5–6, 319 S.W.3d at 262. In assessing the existence of probable cause, this court's review is liberal rather than strict. *Id.* at 6, 319 S.W.3d at 262. In the context of traffic stops, our supreme court has "repeatedly held that [the] degree of proof sufficient to sustain a finding of probable cause is less than required to sustain a conviction." *Id.*, 319 S.W.3d at 262. In other words, whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually

3

guilty of the violation that the officer believed to have occurred. *Id.*, 319 S.W.3d at 262. Instead, the relevant inquiry is simply whether, at the time of the stop, a person of reasonable caution could have believed that a traffic violation had occurred. *Id.*, 319 S.W.3d at 262.

Claypoole argues that the evidence demonstrates that Officer Gregory lacked probable cause to believe that Claypoole made an improper lane change under Arkansas Code Annotated section 27-51-403 (Repl. 2022). Claypoole was stopped for and charged with violating section 27-51-403(b). Section 27-51-403 provides:

> (a) No person shall turn a vehicle from a direct course upon a highway unless and until the movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal in the manner provided in subsection (b) of this section in the event any other vehicle may be affected by the movement.

> (b) A signal of intention to change lanes or to turn right or left shall be given continuously during not less than the last one hundred feet (100') traveled by the vehicle before changing lanes or turning.

Ark. Code Ann. § 27-51-403(a), (b). All the evidence presented at the suppression hearing demonstrates that Officer Gregory reasonably believed that Claypoole had violated section 27-51-403(b). Officer Gregory testified that Claypoole failed to signal for one hundred feet before he changed lanes. The dash-cam video confirms this. It shows that the first time Claypoole (driving the maroon vehicle) flashed his turn signal, his driver-side rear tire was on the center line, foreclosing the possibility that he signaled for one hundred feet before changing lanes:



These facts within Officer Gregory's knowledge were sufficient to permit a person of reasonable caution to believe that Claypoole made an improper lane change in violation of section 27-51-403(b). Accordingly, probable cause supported the officer's traffic stop.

On appeal, Claypoole all but concedes that he failed to signal his intention to change lanes for one hundred feet before he changed lanes as required by section 27-51-403(b). Yet he maintains there was a lack of probable cause for the stop because he was not required to signal at all before changing lanes.

First, he contends that under section 27-51-403(a), he was required to signal only "in the event any other vehicle may be affected by [his] movement." Citing Officer Gregory's

testimony that he did not believe that Claypoole's "failure to signal" affected "the movement of any vehicles in any way," Claypoole asserts that he was therefore not required to signal when he changed lanes.

A similar argument was raised and rejected in *Murchison v. State*, 2014 Ark. App. 379. In *Murchison*, this court was presented with the question of whether probable cause supported a police officer's traffic stop based on a violation of section 27-51-403. The officer testified at the suppression hearing that while he was following Murchison, who was traveling behind two other vehicles, the officer saw Murchison "drift" into a turn lane without using a signal and then make two turns without signaling. *Id.* at 2. The officer also stated that Murchison's failure to use his turn signal did not impact the officer's driving. *Id.* at 3. In finding that probable cause supported the stop, the circuit court found that the officer was a driver affected by Murchison's movement given that he was following Murchison's vehicle and that the officer could have reasonably believed that a traffic violation had occurred. *Id.*

On appeal, Murchison argued that he did not violate the turn-signal law because there was no oncoming traffic that might have been affected and because the officer testified that he was not affected by Murchison's movement. *Id.* at 4. This court noted that the statute does not define what conditions must be present for a vehicle to be "affected" by another vehicle's movement, but "[o]ne could reasonably conclude that, given the use of the words 'may' and 'in the event,' the statute refers to the potential for another vehicle to be affected viewed from an objective standpoint." *Id.* at 5. After stating that the circuit court did not err in finding that the officer was affected by Murchison's movement, this court held that under

the facts presented there, a person of reasonable caution could believe that a traffic offense had been committed. *Id.*

In the case at bar, viewed from an objective standpoint, there is ample evidence that other vehicles may have been affected by Claypoole's movement or that there was the "potential for another vehicle to be affected" by Claypoole's movement. *Id.* at 5. Officer Gregory testified and the video confirms that there was at least one vehicle in front of Claypoole (the tractor trailer) and at least two vehicles behind him (a gray sedan and the officer's vehicle). Therefore, Officer Gregory's testimony that other vehicles were not actually affected by Claypoole's failure to signal is of no significance. All that is required under the statute is that any other vehicle may be affected by Claypoole's movement. *See also Mitchell v. State*, 2012 Ark. App. 128, at 2 (affirming circuit court's denial of Mitchell's motion to suppress when the evidence showed that the officer's vehicle was the only other vehicle on the road, it was traveling ahead of Mitchell, and the officer observed Mitchell's failure to signal in his (the officer's) rearview mirror). Accordingly, we hold that there is no merit to Claypoole's argument that he was not required to signal before he changed lanes.

Next, relying on *Pargament v. State*, 2019 Ark. App. 311, 577 S.W.3d 761, Claypoole claims that other vehicles caused him to violate the improper-lane-change statute; therefore, his failure to signal cannot be considered evidence of probable cause to support the traffic stop. For further support, he cites Officer Gregory's testimony that a gray sedan "swerved

7

into [Claypoole's] lane and that a tractor trailer pulled in front of him into the same lane of traffic."[2]

In *Pargament*, an officer pulled Pargament over for following a white vehicle too closely. However, the officer testified at the suppression hearing that the white vehicle pulled in front of Pargament, which caused Pargament to follow the white vehicle too closely. *Id.* at 4, 577 S.W.3d at 764. This court held that "the 'fault' . . . lay more with the driver who pulled into Pargament's lane" and that the officer did not allow enough time for Pargament to correct the situation that he admittedly did not cause. *Id.* at 5, 577 S.W.3d at 764.

*Pargament* is distinguishable. First, Claypoole was not stopped for following too closely. Second, there was no testimony at the suppression hearing that any other vehicle caused Claypoole to change lanes without properly signaling, and the video footage confirms that neither the gray sedan nor the tractor trailer caused Claypoole to change lanes. To the contrary, the evidence demonstrates that the tractor trailer and the gray sedan had already merged onto the interstate and were in the same lane of traffic in front of and behind Claypoole, respectively, before Claypoole initiated the lane change. Unlike Pargament's following too closely that occurred (by the officer's own admission) as a direct result of another's lane change, Claypoole independently changed lanes but failed to signal for the requisite distance under the statute.

---

[2]The video does not show the gray sedan swerving *into* Claypoole's lane of traffic. The video shows the gray sedan swerve within its own lane toward Claypoole's lane of traffic and then merge onto the interstate behind Claypoole.

The relevant inquiry in this case is, when liberally reviewing the evidence, whether a person of reasonable caution could have believed that Claypoole violated section 27-51-403(b). The answer is yes. Therefore, the circuit court's finding that probable cause supported the traffic stop is not clearly against the preponderance of the evidence.[3] We affirm the circuit court's denial of Claypoole's motion to suppress.

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, BARRETT, THYER, and BROWN, JJ., agree.

GLADWIN, HIXSON, and MURPHY, JJ., dissent.

MIKE MURPHY, Judge, dissenting. After conducting a de novo review of the totality of the circumstances, I believe the trial court clearly erred in finding probable cause for the stop. The evidence does not support that a person of reasonable caution would believe an offense occurred. Specifically, between the dashcam video and the officer's candid testimony, I do not believe a person would have engaged his or her turn signal within the time and distance prescribed in the statute.

Contrary to the majority's view, the officer's testimony that Claypoole's lane change did not affect any other vehicle is relevant. I believe one objective measure to assess whether the failure to signal "may" or "could have" impacted traffic is to consider whether it actually did. Here, the undisputed evidence shows that Claypoole's maneuver did not impede or alter the movement of the two merging or surrounding vehicles.

---

[3]Notably, the jury in this case found—beyond a reasonable doubt—that Claypoole committed the violation of an improper lane change.

Importantly, this incident occurred on an interstate. Had it taken place in city traffic—where turning lanes, cross-traffic, and pedestrians are common—the analysis might differ. Those factors illustrate how failure to signal could affect traffic. In this case, however, there is no testimony or evidence suggesting that traffic was, or even could have been, affected.

Alternatively, I find *Pargament v. State*, 2019 Ark. App. 311, 577 S.W.3d 761, persuasive and agree with Claypoole's argument that he was not required to signal for the statutorily prescribed period because another vehicle's actions created the situation.

I disagree with the majority's characterization of the video that the tractor-trailer and gray sedan had already merged and were positioned in front of and behind Claypoole. The majority overlooks that this merging occurred within seconds while all vehicles were traveling at high speed. The dashcam footage shows that Claypoole's proximity to the tractor-trailer was not due to his own conduct but was caused by the truck driver. Claypoole changed lanes to maintain safety and avoid following too closely. Although he was not cited for following too closely, the need to change lanes arose from the tractor-trailer's maneuver, and the officer did not allow sufficient time for Claypoole to respond appropriately.

For these reasons, I would reverse.

Gladwin and Hixson, JJ., join.

*Medlock & Gramlich, Attorneys at Law*, by: *M. Jered Medlock*, for appellant.

*Tim Griffin*, Att'y Gen., by: *James Hill*, Ass't Att'y Gen., for appellee.