2013 Ark. 70

**Alfonso VILLANUEVA, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–621.**

Supreme Court of Arkansas.

Feb. 21, 2013.

Rehearing Denied March 28, 2013.

Ken Swindle, Bentonville, for appellant.

Dustin McDaniel, Att'y Gen., by: Ashley Argo Priest, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Justice.

Alfonso Villanueva entered a conditional plea of guilty to the charge of driving without a driver's license for which he was sentenced to two days' home confinement and required to pay a $60 fine and court costs. Pursuant to Arkansas Rule of Criminal Procedure 24.3, Villanueva reserved the right to appeal the circuit court's denial of his motion to suppress evidence found in what he claims was an illegal stop. For reversal of the circuit court's decision, Villanueva argues that (1) the stop was unlawful because no Arkansas law makes it illegal to operate a vehicle with a cracked windshield and (2) the traffic stop was based entirely on "profiling" and thus violated Arkansas statutory and constitutional law. We affirm.

We assumed jurisdiction from the court of appeals because this case involves issues of first impression, clarification of the law, and construction of Acts of the General Assembly. Ark. Sup.Ct. R. 1-2(b)(*l*), (5), & (6) (2012). When we review a circuit court's denial of a motion to suppress evidence, we conduct an independent inquiry based on the totality of the circumstances, evaluating findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause. *Hinojosa v. State*, 2009 Ark. 301, 319 S.W.3d 258. We give due weight to inferences drawn by the circuit court, and we will reverse the circuit court only if the ruling is clearly against the preponderance of the evidence. *Id.* We also defer to the trial court's superior position to judge the credibility of witnesses. *Id.*

In Villanueva's suppression motion, he asserted that law enforcement lacked probable cause to stop his vehicle. He also challenged Arkansas Code Annotated section 27–32–101 (Repl.2008) as being unconstitutional but abandoned the constitutional issue prior to the circuit court considering the issue.

At Villanueva's suppression hearing, Officer Jacob Baker Whorton, a fourteen-year veteran of the Springdale Police Department, testified that while on duty during the day shift of October 4, 2011, he noticed a car, driven by Villanueva, with a windshield crack that went all the way across the windshield. He stopped Villanueva for operating an unsafe motor vehicle. Officer Whorton stated that he believed that driving with a cracked windshield violated Arkansas Code Annotated section 27–32–101, although, on the witness stand, he admitted that he was not sure if the statute had the word "windshield" in it. Officer Whorton testified that he thought the cracked windshield was unsafe because it compromised the structural integrity of the vehicle and partially obscured the driver's view.

Villanueva was unable to produce a driver's license, but he did produce a Mexican identification card. Dispatch confirmed that there was no driver's license listed in Villanueva's name. Officer Whorton cited Villanueva for driving without a license and had the vehicle towed in accordance with his department's policies. He admitted that he did not cite Villanueva for driving with a cracked windshield. Villanueva concluded his case by submitting a picture of the cracked windshield into evidence.

After the hearing, the trial court found that there was "absolutely no evidence" that Villanueva's stop was pretextual. It also found that there was no evidence that the stop was the result of "profiling" based on race or national origin. After the trial court announced its ruling from the bench, Villanueva entered his conditional plea. He timely filed a notice of appeal.

Villanueva first argues that the stop was unlawful because no Arkansas law makes it illegal to operate a vehicle with a cracked windshield. He urges this court to hold that a traffic stop based solely on a cracked windshield is, as a matter of law, an illegal stop. Villanueva contends that windshields are not mentioned in section 27–32–101 and suggests that the statute only relates to *mechanical* defects. He seeks to bolster this argument by examining other statutes that mention windshields, Arkansas Code Annotated section 27–37–301 (Repl.2008), which requires that Arkansas motor vehicles be equipped with safety glass, and Arkansas Code Annotated section 27–37–302 (Repl.2008), which proscribes driving a vehicle with nontransparent material on the glass that obstructs the operator's view, asserting that these statutes are similarly not helpful to the State. Further, he urges us to find persuasive an Alabama case, *J.D.I. v. State,* 77 So.3d 610 (Ala.Crim.App.2011), where the Alabama Court of Criminal Appeals declared that a traffic stop of a juvenile who was operating a motor vehicle with a cracked windshield was improper because it involved a mistaken interpretation of Alabama law. We find this argument unpersuasive.

Villanueva's assertion that, as a matter of law, a traffic stop initiated solely because of a cracked windshield should be declared illegal was not raised to the trial court. We will not consider arguments for the first time on appeal that were not advanced below as part of the motion to suppress. *Decay v. State,* 2009 Ark. 566, 352 S.W.3d 319. Villanueva has preserved his argument that driving with a cracked windshield did not violate section 27–32–101 because a cracked windshield was not a "mechanical defect," which we agree with, as far as it goes. Villanueva, however, fails to note that section 27–32–101(a)(1) also requires a vehicle's "equipment" to be "in good working order." A windshield, while not "mechanical," is nonetheless "equipment." As we noted in *Ragland v. Dumas,* 292 Ark. 515, 520, 732 S.W.2d 118, 120 (1987), equipment is "an exceedingly elastic term, the meaning of which depends on context." Although hitherto not addressed in Arkansas, other jurisdictions routinely refer to operating a vehicle with a cracked windshield as an "equipment violations" in the context of traffic stops predicated on perceived violation of the state's general motor vehicle safety statute. *See Vaughan v. State,* 279 Ga.App. 485, 631 S.E.2d 497 (2006); *State v. Jones,* 711 N.W.2d 732 (Iowa Ct.App. 2006); *State v. Kinser,* 141 Idaho 557, 112 P.3d 845 (Ct.App.2005); *State v. Miller,* 659 N.W.2d 275 (Minn.Ct.App.2003); *State v. Kadelak,* 280 N.J.Super. 349, 655 A.2d 461 (Ct.App.Div.1995). Moreover, section 27–32–101(a)(2)(A), which states: "Any law enforcement officer having reason to believe that a vehicle may have safety defects shall have cause to stop the vehicle and inspect for safety defects," indicates that section 27–32–101 concerns more than just "mechanical" deficiencies. We hold that under the facts of this case, a windshield with a crack running from roof post to roof post across the driver's field of vision is the type of "safety defect" contemplated by section 27–32–101(a)(2)(A).

At the suppression hearing, Officer Whorton opined, without objection, that a windshield crack of the magnitude he observed in Villanueva's vehicle made the car unsafe because it compromised the structural integrity of the vehicle and impaired the vision of the driver. According to Officer Whorton, that was the reason why he made the traffic stop. In reviewing a trial court's determination that there was probable cause to make a traffic stop, our inquiry is whether there are "facts or

circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Hinojosa,* 2009 Ark. 301, at 5, 319 S.W.3d at 262. We cannot say that the trial court clearly erred in crediting Officer Whorton's testimony and finding that the traffic stop was proper.

Finally, Villanueva's reliance on, *J.D.I. v. State, supra,* is misplaced. While both the traffic stops in the case at bar and in the Alabama case involved vehicles with cracked windshields, the arresting officers were acting pursuant to much different statutes. The Alabama statute at issue provided that a windshield must be "unobstructed," while the Arkansas statute at issue related to "safety defects." The Alabama court held that the windshield crack did not constitute a visual obstruction under the Alabama statute, which ₆meant that the traffic stop was based on a mistake of Alabama law. *J.D.I. v. State,* 77 So.3d at 616. Officer Whorton's assessment that Villanueva's cracked windshield constituted a safety defect was not a mistake of Arkansas law.

■ Villanueva next argues that the traffic stop was based entirely on "profiling" and was thus illegal under Arkansas statutory and constitutional law. He contends that "common sense" dictates that the "real" reason for the traffic stop was that Villanueva was Hispanic. He asserts that "no reasonable person could possibly conclude Officer Whorton sincerely believed [his] windshield was unsafe." He directs this court's attention to the picture of the windshield. We find this argument unpersuasive.

Villanueva does not refer this court to any testimony by Officer Whorton or anyone else suggesting that the stop was based on profiling. Villanueva has placed nothing in the record, except for his sur-

name, that would indicate that he is Hispanic, and he has given us no reason to think that his surname would have been known to Officer Whorton prior to the stop. Thus, his argument is flawed.

Further, as noted previously, the trial court credited Officer Whorton's testimony. While our review is de novo, we defer to the superior position of the trial judge in determining a witness's credibility. *Hinojosa, supra.* The picture of the windshield, which shows that the crack runs completely across the vehicle from roof post to roof post, does appear to be in a position that would obstruct the driver's vision and impair the structural integrity of the vehicle. We have said that we will not disregard the testimony of a witness whose credibility was credited by the trier of fact unless it can be said with assurance that ₇it was "inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Leach v. State,* 2012 Ark. 179, 402 S.W.3d 517. Under this standard, we have no reason to question Officer Whorton's credibility. Accordingly, we affirm.

HANNAH, C.J., concurs.

CORBIN and DANIELSON, JJ., dissent.

PAUL E. DANIELSON, Justice, dissenting.

Because I believe that probable cause is lacking in the instant case, I respectfully dissent. In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *See Webb v. State,* 2011 Ark. 430, 385 S.W.3d 152. Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *See*

*Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001). In assessing the existence of probable cause, our review is liberal rather than strict. *See id.* Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation which the officer believed to have occurred. *See id.*

The relevant inquiry is whether there were facts or circumstances within Officer Whorton's knowledge that were sufficient to permit a person of reasonable caution to believe that an offense had been committed by Villanueva. Here, Officer Whorton testified that he stopped Villanueva because the windshield of Villanueva's car was cracked, which Officer Whorton believed to be a violation of Arkansas Code Annotated § 27–31–101. That statute provides, in pertinent part:

> (a)(1) No person shall drive or move any vehicle subject to registration on any highway in this state unless the equipment on the vehicle is in good working order and adjustment as required for the vehicle's safe operation and unless the vehicle is in safe mechanical condition as not to endanger the driver, other occupants of the vehicle, or any other person.
>
> (2)(A) Any law enforcement officer having reason to believe that a vehicle may have safety defects shall have cause to stop the vehicle and inspect for safety defects.
>
> . . . .
>
> (b) Any certified police officer upon reasonable cause to believe that a motor vehicle is unsafe or not equipped as required by law or that its equipment is not in proper adjustment or repair [may] require the driver of the motor vehicle to stop and submit the vehicle to an inspection and test as may be appropriate.

Ark.Code Ann. § 27–32–101(a),(b) (Repl. 2008).

The plain language of the statute requires vehicles to have equipment in good working order and to be in safe mechanical condition. "Equipment" is defined as "the physical resources serving to equip a person or thing: as (1) the implements (as machinery or tools) used in an operation or activity: APPARATUS." *Webster's Third Int'l Dictionary* 768 (2002). "Mechanical" means "of, relating to, or concerned with machinery or tools." *Id.* at 1400. Neither definition, in my opinion, encompasses a vehicle's windshield.

While the statute does permit an officer to stop a vehicle if under the belief that it has a safety defect, it is clear from the statute that the safety defects are limited to a vehicle's equipment that is not in good working order and a vehicle in an unsafe mechanical condition. Based on the fact that a simple cracked windshield in no way violates section 27–32–101 and that Officer Whorton's sole basis for stopping Villanueva was his cracked windshield, I cannot say that the facts or circumstances within Officer Whorton's knowledge were sufficient to permit a person of reasonable caution to believe that Villanueva was driving a vehicle with equipment not in good working order or in an unsafe mechanical condition. Because there was no probable cause to believe that Villanueva committed an offense, I would hold that the circuit court erred in denying Villanueva's motion to suppress.

CORBIN, J., joins.