SLIP OPINION

Cite as 2015 Ark. 50

# SUPREME COURT OF ARKANSAS

No. CR–14–578

| | | |
|---|---|---|
| ISAAC ELISHA EVANS | | **Opinion Delivered** February 19, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CR2013-860] |
| V. | | |
| STATE OF ARKANSAS | | |
| | | HONORABLE BARRY SIMS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Isaac Elisha Evans was convicted by a Pulaski County jury of aggravated robbery and theft of property. He waived jury sentencing and was sentenced by the court as a habitual offender to a term of life imprisonment in the Arkansas Department of Correction. On appeal, he argues that the circuit court clearly erred in denying his motion to suppress evidence seized when the police, relying solely on an arrest warrant and an anonymous tip, entered his motel room using a key card and executed an arrest warrant. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2014). We affirm.

On February 22, 2013, a Simmons Bank in Little Rock was robbed by a Caucasian man. He presented Garianne Smith, who was working as a teller, a note that read, "Give me all the money from the highest bills to the smallest. No GPS, no tracking. Your cooperation depends on your safety." When Ms. Smith hesitated, the robber pulled up his shirt revealing that he had a hand in one of his pockets. The teller handed him nearly $4000.

Shortly after the robbery, appellant's brother-in-law, Louis Martin, recognized Evans in pictures from the robbery that had been posted on a local TV station's website. He

contacted police and informed them that the suspect they were seeking was Evans. Two bank employees, Garianne Smith and Sarah Lane, confirmed that Evans was the robber by picking his picture out of a photo array. The police secured an arrest warrant.

On February 26, 2013, Evans was apprehended in a North Little Rock motel room. In the room, police found a pair of Coogi jeans like those that the suspect was wearing in bank-surveillance photos; some "loose" money; Evans's state-issued identification card, issued the day of the robbery, which showed him clean shaven and with close-cropped hair; and hair clippers and shaving supplies. Evans moved to suppress the evidence that was seized as a result of his arrest.

At the suppression hearing, the arresting officer, Little Rock Police Detective Barry Flannery, testified that at approximately 8:00 p.m. on February 26, he and Sergeant Bruce Maxwell were working in downtown Little Rock when they received information via radio transmission that Detective Terrell Vaughn had received an anonymous tip that Evans was in room 123 at America's Best Value Inn on J.F.K. Boulevard in North Little Rock. Flannery testified that he believed that the anonymous caller had also notified North Little Rock police that Evans was at the motel. According to Flannery, he, Maxwell, and Sergeant Calvin Grogan proceeded directly to the motel. He further testified that they obtained a key card from the motel office, and as they approached the room, they noted that a light was on and they could hear the sounds of a television. According to Detective Flannery, the light and the sound of the television was the basis for their belief that Evans was present in the room.

When their knock on the door was not answered, they used the key card to gain entrance to the motel room where they encountered Evans, sitting on a bed. After arresting him, they impounded his belongings in accordance with department policy. According to Flannery, all of the items seized in the motel room were in plain sight. On cross-examination, Flannery admitted that he did not know how the key card was obtained from the desk clerk, recalling only that Sergeant Maxwell had brought it to him while he watched the room identified by the anonymous caller.

The other two police officers were called as witnesses at the hearing. Little Rock Police Sergeant Calvin Grogan likewise testified that he and other officers went to the North Little Rock motel with the sole purpose of arresting Evans. He did not provide any information concerning how the key card was obtained, remembering only that "Detective Flannery had one." Little Rock Police Sergeant Bruce Maxwell confirmed that he participated in Evans's arrest, along with Detectives Flannery and Grogan. Like Grogan, Maxwell could not recall how the key card was obtained. Both detectives stated that the items seized were close to Evans at the time of his arrest.

Relying on *Alabama v. White*, 496 U.S. 325 (1990), *Payton v. New York*, 445 U.S. 573 (1980), and *Scroggins v. State*, 276 Ark. 177, 633 S.W.2d 33 (1982), Evans acknowledged to the circuit court that when the police have an arrest warrant, they may enter a person's home or motel room if the police officer has reason to believe that it is his home and he is present. He further asserted that "reason to believe means that the police serving the warrant must believe two things: One, that the person arrested lives in the residence, and two, that

SLIP OPINION

the person is actually in the residence." Evans argued further that an anonymous tip that was not corroborated or verified does not establish a reasonable belief. After arguments of counsel, the circuit court denied Evans's motion to suppress. Evans timely filed a notice of appeal.

On appeal, Evans argues that the circuit court clearly erred in denying his motion to suppress evidence because the Little Rock Police officers who entered his motel room to serve an arrest warrant did so based on nothing more than an uncorroborated anonymous tip that he was present in the room. He notes further that the police entered the room without a search warrant, without consent, and without exigent circumstances. Evans asserts that police officers may only enter a residence to serve an arrest warrant if they have reason to believe that the person to be arrested lives in the residence. Further, Evans contends that for police officers to lawfully serve an arrest warrant on a suspect living in a residence, they must have a reasonable belief that (1) the suspect lives in the residence to be entered and (2) the suspect is present when the police enter the residence. He further contends that, as a matter of Arkansas law, a "reasonable belief" is a belief that an ordinary prudent person would form under the circumstances, not a belief that was recklessly or negligently formed. Accordingly, Evans argues, the entry into his motel room was illegal because it was based on an uncorroborated anonymous tip without any exigent circumstances that justified their entry. He also asserts that he was prejudiced because the evidence seized in the arrest corroborated an eyewitness account that he was wearing a particularly distinctive brand of jeans and that he had undertaken an effort to change his appearance.

Evans's argument presents an issue of first impression as to whether officers executing a valid arrest warrant can form a reasonable belief that the person to be arrested is residing in a motel room based solely on an anonymous uncorroborated tip. Even though the police had secured an arrest warrant for Evans, absent exigent circumstances or consent, the arresting officer could not enter the dwelling of a third party without a search warrant. *Steagald v. United States*, 451 U.S. 204 (1981). In *Payton*, however, the Supreme Court stated that an arrest warrant was sufficient to satisfy the Fourth Amendment where the entry of a suspect's dwelling was concerned. 445 U.S. at 603. It stated:

> It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

445 U.S. at 602–03. The United States Court of Appeals for the Eighth Circuit has held that under *Payton*, officers executing an arrest warrant at a residence must have (1) a reasonable belief that the suspect resides at the place to be entered and (2) reason to believe the suspect is present. *United States v. Risse*, 83 F.3d 212 (8th Cir. 1996). In *Risse*, the police discovered marijuana and drug paraphernalia when they entered Risse's home to execute an arrest warrant on Risse's girlfriend, Rhoads. The police knew that Rhoads maintained a separate residence, but learned from Rhoads that she was "staying" with Risse. The Eighth Circuit held that Rhoads's information provided police with a reasonable belief that Rhoads

SLIP OPINION

resided with Risse.

When we review a circuit court's denial of a motion to suppress evidence, we conduct an independent inquiry based on the totality of the circumstances, evaluating findings of historical facts for clear error. *Villanueva v. State*, 2013 Ark. 70, 426 S.W.3d 399. We give due weight to inferences drawn by the circuit court, and we will reverse the circuit court only if the ruling is clearly against the preponderance of the evidence. *Id*. We also defer to the trial court's superior position to judge the credibility of witnesses. *Id*.

In the case before us, the police based their decision to enter Evans's room solely on the anonymous tip, which was received by someone other than the arresting officers. They could relate no details regarding the tip. Likewise, the police did not provide any information to establish any other basis for a reasonable belief that Evans was residing in the room. The police were unable to recall how they obtained a key card to room 123, or even which of the three officers actually procured it. Regarding whether the police had reason to believe that Evans was present in the motel room, the police again relied exclusively on the anonymous tip. Although their testimony that the lights and television were on might support a reasonable belief that someone was in the room, nothing but the anonymous tip indicated that the occupant, if any, was Evans. Additionally, the officers observed no activity, and no one answered when they knocked on the door. Accordingly, we cannot say that under these facts the police had a reasonable belief that it was Evans's motel room and that Evans was present.

The Supreme Court held in *Navarette v. California*, 134 S. Ct. 1683 (2014), that an

anonymous tip, without a sufficient indicia of reliability, cannot provide a basis for finding reasonable suspicion to make a traffic stop.[1]  It stated, "[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity."  *Id*. at 1688 (citing *White v. Alabama*, 496 U.S. 325, 329 (1990)).  Here, the uncorroborated anonymous tip, standing alone, did not provide sufficient detail for a reasonable belief that the motel room was Evans's room or that Evans was present.  *Payton*, *supra*.  Thus, the circuit court erred in admitting the evidence seized incident to Evans's arrest.

However, our inquiry does not end there.  The denial of a motion to suppress can be harmless error when the evidence of guilt is overwhelming and the error is slight, or this court concludes beyond a reasonable doubt that the error did not contribute to the verdict.  *Livingston v. State*, 2013 Ark. 264, 428 S.W.3d 474.  In applying this doctrine, we must exclude the improperly admitted evidence and examine the remaining evidence.  *Id*.

As noted previously, the evidence seized in Evans's motel room was relevant because it tended to corroborate Evans's identity as the bank robber.  However, Evans's identity as

---

[1]The concurring opinion's attack on our citation of *Navarette* bears some explaining. The *Navarette* Court stated:

> The indicia of the 911 caller's reliability here are stronger than those in *J.L.* [ *v. Florida*,] where we held that a bare-bones tip was unreliable. 529 U.S. at 271. Although the indicia present here are different from those we found sufficient in *White*, there is more than one way to demonstrate "a particularized and objective basis for suspecting the particular person stopped of criminal activity." [*United States v*.]*Cortez*, 449 U.S. 411, 417–418. Under the totality of the circumstances, we find the indicia of reliability in this case sufficient to provide the officer with reasonable suspicion that the driver of the reported vehicle had run another vehicle off the road. That made it reasonable under the circumstances for the officer to execute a traffic stop.

Accordingly, the *Navarette* Court stated that more was required than a "bare-bones tip."

the person who robbed the bank was established at trial by more than two dozen surveillance photos; identification of Evans by bank employees Garianne Smith and Sarah Lane; and testimony of Louis Martin, Evans's brother-in-law, that Evans was the person depicted in the surveillance photos. The foregoing constitutes overwhelming evidence of Evans's identity; therefore, we hold that the circuit court's error in denying Evans's motion to suppress was harmless beyond a reasonable doubt.

Pursuant to Arkansas Supreme Court Rule 4-3(i) (2014), the record has been reviewed for all objections, motions, and requests that were decided adversely to Evans, and no prejudicial error has been found.

Affirmed.

HANNAH, C.J., and DANIELSON and GOODSON, JJ., concur.

**JIM HANNAH, Chief Justice, concurring.** I agree with the disposition in this case. I write separately to clarify the law that should be applied in cases involving alleged *Payton* violations, to state my analysis of the issues on appeal, and to address errors contained in the majority opinion.

On appeal, Evans challenges the circuit court's denial of his motion to suppress evidence seized from his motel room. He claims that the evidence should have been suppressed because it was obtained after a *Payton* violation. In *Payton v. New York*, 445 U.S. 573, 603 (1980), the Supreme Court of the United States held that, "for Fourth Amendment purposes, an arrest warrant founded on probable cause[1] implicitly carries with

---

[1]Evans does not argue that the outstanding warrant for his arrest was invalid.

it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Pursuant to *Payton*, officers executing an arrest warrant at a residence[2] must have (1) a reasonable belief that the suspect resides at the place to be entered and (2) reason to believe that the suspect is present at the time the warrant is executed. *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996); *see also Benavidez v. State*, 352 Ark. 374, 379–80, 101 S.W.3d 242, 246–47 (2003) (applying *Payton* analysis); *Gutierrez v. State*, 2012 Ark. App. 628, at 6–7 (same).

In this case, the officers executing the warrant received an anonymous tip that Evans was in room 123 at Americas Best Value Inn on JFK Boulevard in North Little Rock. In my view, under the facts of this case, the anonymous tip was not sufficient to support a reasonable belief that Evans resided in room 123 of the motel, nor did it provide sufficient reason to believe that Evans was present in the motel room when police officers executed the warrant. Thus, I agree with the majority's holding that the circuit court erred in denying Evans's motion to suppress.

I write separately on this issue because I believe that the analysis of the suppression issue should conclude with the application of *Payton* to the facts of this case. The majority goes further, however, and cites to *Navarette v. California*, 134 S. Ct. 1683 (2014), a case in which the Supreme Court of the United States recognized that an uncorroborated

---

[2]The State concedes that, in this case, the motel room was the equivalent of Evans's residence for Fourth Amendment purposes. *See Scroggins v. State*, 276 Ark. 177, 182, 633 S.W.2d 33, 37 (1982) ("[I]t does not matter that a hotel or motel room is not a permanent residence; one registered at a motel or hotel as a guest is protected against unreasonable searches and seizures by the fourth amendment to the United States Constitution.").

anonymous tip can demonstrate sufficient indicia of reliability to provide reasonable suspicion to make a traffic stop. In doing so, the majority either fails to understand or declines to acknowledge that *Navarette* is legally distinguishable from the instant case. *Navarette*, a traffic-stop case, applied the "reasonable suspicion"standard discussed in *Terry v. Ohio*, 392 U.S. 1 (1968). The "reasonable belief" or "reason to believe" standard announced in *Payton* must be applied in the instant case. Because the majority's reference to *Navarette* will likely cause confusion, it should not be included in the opinion.

I also agree with the majority that the circuit court's error in denying Evans's motion to suppress was harmless error; I write separately to state my analysis of the issue and to flesh out the facts and arguments the majority fails to mention. The denial of a motion to suppress can be harmless error when the evidence of guilt is overwhelming and the error is slight, or this court concludes beyond a reasonable doubt that the error did not contribute to the verdict. *E.g.*, *Livingston v. State*, 2013 Ark. 264, at 8, 428 S.W.3d 474, 479. To apply this doctrine, the appellate court must excise the improper evidence and examine the remaining evidence. *Id.*, 428 S.W.3d at 479.

Even if the evidence seized from Evans's motel room is excluded,[3] there is ample

---

[3]Photographs of Evans's personal property that police officers seized from his motel room when they arrested him were introduced into evidence as State's Exhibits Nos. 36–39. Evans claims that he was prejudiced by the admission of Exhibit No. 36, a photograph showing a pair of jeans with the label "COOGI" on the back pocket, because it corroborated witness Sarah Lane's identification of him. He also challenges the admission of Exhibit No. 37, a photograph of an Arkansas nondriver's identification card issued to Evans on the same day as the robbery, and Exhibit No. 39, a photograph showing an electric hair trimmer. Evans claims that the admission of these exhibits was prejudicial because they helped the State prove that he had tried to change his appearance after the robbery to evade identification and

evidence to sustain the State's convictions for aggravated robbery and theft of property. A person commits aggravated robbery if, with the purpose of committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person and is armed with a deadly weapon or represents by word or conduct that he or she is armed with a deadly weapon. *See* Ark. Code Ann. §§ 5-12-102 to –103(a)(1), (2) (Repl. 2013). A person commits theft of property if he or she knowingly takes or exercises unauthorized control over property of another person with the purpose of depriving the owner of the property or obtains the property of another person by deception or by threat with the purpose of depriving the owner of the property. *See id.* § 5–36–103(a)(1), (2).

The record reflects that, on February 22, 2013, after being buzzed into the bank, Evans approached Garianne Smith, an employee working at the teller window, handed her a note and said, "Just do what it says." The note said, "Give me all the money starting with the biggest bills to the smallest. No die packs, GPS devices. Your cooperation depends on all of your safety." Smith said that Evans raised his shirt just enough to show his left hand in his pants pocket on what Smith believed to be a weapon. Smith testified that she was very scared and wondered if he was going to shoot everyone in the bank. She then placed money in a bag and gave it to Evans.

Sarah Lane was also working at Simmons Bank at the time of the robbery. She said that she saw Evans approach the door and that he "just seemed out of place." Evans then

---

because they allowed the jury to infer that he was conscious of his guilt.

entered the bank and walked to the teller lane and was out of Lane's sight. Lane said that when he got to the door to leave the bank, he pushed the door, but it would not open because it was "mag locked." Lane said that he turned to his left and looked at her, giving her a look that she called "alarming" and "stern." The door then released, and according to Lane, Evans "bolted," and then she heard Smith yelling, "Lock the doors. Lock the doors. We've just been robbed." Lane said that Smith was visibly shaking and "white as a ghost" after the robbery.

From a photo spread, both Smith and Lane identified Evans as the person who had robbed the bank. Smith and Lane also made in-court identifications of Evans.

Evans's brother-in-law also identified Evans in court. Martin testified that, after seeing still pictures from the robbery on the news, he contacted police and informed them that the person in the pictures was his brother-in-law, Isaac Evans.

In light of the overwhelming evidence presented of Evans's guilt, I agree with the majority that the circuit court's error in denying Evans's motion to suppress was harmless beyond a reasonable doubt. Therefore, I would affirm his convictions for aggravated robbery and theft of property.

DANIELSON, J., joins.

**COURTNEY HUDSON GOODSON, Justice, concurring.** I fully agree with the majority that the anonymous tip in this case does not support a finding that the officers had a reasonable belief that Evans resided in the motel room or that he was present at the time they entered, and accordingly, the officers' entry into the motel room to serve the arrest

warrant was invalid. Therefore, I join the majority's opinion. However, I write separately to emphasize that by citing to *Navarette v. California*, 134 S. Ct. 1683 (2014), the majority is not equating the standard of reasonable belief, as established in *Payton v. New York*, 445 U.S. 573 (1980), to that of reasonable suspicion, as articulated in *Terry v. Ohio,* 392 U.S. 1 (1968). Courts are split on what quality of information is required to form a reasonable belief under *Payton*, *supra.* Some courts hold that the standard requires something akin to probable cause, while others hold that the requisite showing is a lower standard more comparable to reasonable suspicion. *Compare United States v. Gorman*, 314 F.3d 1105 (9th Cir. 2002) *with United States v. Thomas*, 429 F.3d 282 (D.C. Cir. 2005); *Valdez v. McPheters*, 172 F.3d 1220 (10th Cir. 1999); *United States v. Route*, 104 F.3d 59 (5th Cir. 1997); *United States v. Risse*, 83 F.3d 212 (8th Cir. 1996); *United States v. Lauter*, 57 F.3d 212 (2d Cir. 1995); *United States v. Magluta*, 44 F.3d 1530 (11th Cir. 1995). In the future, this court may be called upon to determine the precise level of proof necessary to support a finding of a reasonable belief under *Payton*, *supra*, but we need not decide that issue today because the facts of the instant case do not even rise to the level of reasonable suspicion. Accordingly, I concur in the majority's analysis of this issue.

*Leslie Borgognoni*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.