Cite as 2021 Ark. App. 163

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR–20–539

| | |
|---|---|
| LEE ALLEN SAFFEL<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** April 14, 2021<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CR-19-655]<br><br>HONORABLE BRENT HALTOM, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Following a bench trial, appellant Lee Allen Saffel was convicted of possession of a controlled substance (methamphetamine) under Arkansas Code Annotated section 5-64-419(b)(1)(A) (Repl. 2016), a Class D felony. He was sentenced as a habitual offender to seven years' imprisonment. For his sole argument on appeal, appellant contends that the circuit court erred in denying his motion to suppress. We affirm.

At the beginning of the June 22, 2020 bench trial, appellant's counsel indicated that he had filed a motion to suppress evidence on the basis of Fourth Amendment violations; however, neither the court nor the State had a copy of the motion.[1] Appellant's counsel asked the court to consider the motion to suppress as it heard the evidence, and the court agreed.

---

[1]The electronic-pleadings record does not contain a suppression motion.

Officer Robert Derrick of the Texarkana Police Department testified that around 1:24 a.m. on September 20, 2019, he was patrolling on East 24th Street when he saw appellant "walking around in circles, walking across the road on Franklin Drive." Franklin Drive is a side street off East 24th Street. Officer Derrick was patrolling in the area because it is a moderate crime area. He testified that there had been a recent shooting in that area and a "bunch" of shots-fired calls. He first saw appellant near the dumpsters at the Shangri-La Apartments. As Derrick drove by, appellant "started walking in the middle of the road on Franklin doing circles." Derrick thought this activity at that time of the night was suspicious and dangerous. Derrick turned around and made contact with appellant, at which time appellant had just stepped over the curb and into the grass on the west side of the street. Derrick could not remember whether appellant had indicated that he was in his yard. When Derrick asked appellant what he was doing in the street, he said he was looking for rocks. Derrick described appellant as having "pinpointed" eyes and seeming "very jittery" like he possibly ingested "illegal narcotics."

Derrick said that after getting appellant's name, he provided the dispatcher with appellant's information, and the dispatcher advised Derrick that appellant had a possible misdemeanor warrant.[2] Derrick asked the dispatcher to confirm the warrant. In the meantime, Derrick asked appellant to step off the curb and step in front of the patrol car to conduct a "patent [sic] search just to be sure . . . he didn't have any guns or anything illegal in his pockets or anything like that due to him having a warrant." Derrick stated that he

---

[2]The transcripts of the dash-cam and body-cam videos introduced indicate the dispatcher said appellant has a "probation violation out of your agency," and Derrick told the dispatcher to "[g]o ahead and confirm."

detained appellant and put him in handcuffs and began the search. Derrick testified that "the warrant was confirmed in the search." During the search, Derrick found a bag of insulin syringes in appellant's left cargo pocket and one syringe out of the bag that contained a clear liquid. Appellant told Derrick that one of his parents is a diabetic. The Arkansas State Crime Laboratory determined that the clear liquid was methamphetamine. The dash-cam and body-cam videos were introduced into evidence without objection and played for the court.

After the State moved to introduce the evidence of the syringe that tested positive for methamphetamine, appellant objected. The circuit court heard appellant's suppression motion at the conclusion of Derrick's testimony. Appellant moved to suppress the syringe because it was "based upon a possible warrant," arguing that Derrick placed him in handcuffs before the warrant was confirmed. The State responded that it was a matter of language that the Texarkana Police Department used to confirm possible warrants, indicating that a "possible warrant doesn't mean we don't know. . . . [W]e've got it here in front of us showing on the computer and we just have to go get the physical file." The State also argued that the officer was acting in a good-faith belief that there was a warrant. The circuit court agreed with the State that it was a matter of language, noting that if the warrant was out of another jurisdiction, the police have to rely on what is on the computer and confirm it at a different time. The circuit court denied the motion to suppress stating that once the officer got word that there was a warrant, he had a right to search appellant incident to arrest.

The State called two more witnesses—Romeo Cross and Hunter Whalen. Cross, a narcotics investigator with the Texarkana Police Department, testified that he interviewed appellant after his arrest. Cross testified that appellant told him that when he was searched,

3

the officer found a syringe with "30 units of speed," which appellant explained was methamphetamine. Whalen, a forensic chemist at the Arkansas State Crime Laboratory, testified that he determined the liquid in the syringe was methamphetamine. The State rested and appellant renewed his motion to suppress, which was denied. Appellant's counsel indicated that he would not move for directed verdict.

Appellant, testifying in his defense, said that on the evening in question, he was walking down the street (or down the side of his parents' backyard) smoking a cigarette when something caught his eye—a red and green light on the ground in front of a trashcan. He recalled seeing a group of people standing around there looking at something a few days earlier. He explained that if you hunt for "crystals or diamonds" at nighttime, you will see a glare. So he went to that area and bent over to look at what he saw, and when he turned around, he saw the police and started to walk back to his backyard. He said that when he "got up to Franklin" he stopped to see if the police officer was going "to pass by, or whether he was gonna stop and conduct an interview," indicating that it was the middle of the night and nobody was out. Appellant testified that the videos were incorrect because he had told the officer he had a crystal—not glass—and questioned the color of the shirt he was wearing that night. Appellant thought the video may have been edited. Appellant denied telling Cross that the syringe contained "speed" and testified that Cross was lying.

At the close of the evidence, appellant renewed his previous motions. The circuit court stood on its prior ruling on the motion to suppress and found appellant guilty of the possession charge and sentenced him as a habitual offender to seven years' imprisonment. A

4

sentencing order was filed June 24, 2020, and appellant filed a timely notice of appeal on July 13, 2020.

In reviewing the denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Martin v. State*, 2017 Ark. App. 107, 513 S.W.3d 295. We defer to the superior position of the circuit court to pass on the credibility of witnesses and will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*

Appellant argues that that the circuit court erred in denying his motion to suppress the open syringe that Officer Derrick discovered during the search because Derrick's initial stop of appellant was illegal.[3] However, this argument was not made below. It is well settled that when an appellant does not advance an argument below as part of the motion to suppress, we will not consider it for the first time on appeal. *Decay v. State*, 2009 Ark. 566, 352 S.W.3d 319 (citing *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001)); *see also Villanueva v. State*, 2013 Ark. 70, at 4, 426 S.W.3d 399, 402 ("Villanueva's assertion that, as a matter of law, a traffic stop initiated solely because of a cracked windshield should be declared illegal was not raised to the trial court. We will not consider arguments for the first

---

[3]Although the circuit court discussed the legality of the stop, this was not argued by appellant in his motion to suppress. Rather, appellant argued only that the search of appellant prior to confirming the outstanding warrant was illegal.

time on appeal that were not advanced below as part of the motion to suppress." (citing *Decay*, *supra*)).

Appellant also argues that Derrick's search of appellant was illegal because he was searched after being placed in handcuffs and before the warrant was confirmed. Here, Officer Derrick was notified by the dispatcher that appellant had a probation violation out of their jurisdiction. Acting on that information, Derrick arrested appellant and conducted a lawful search incident to arrest. Rule 4.2 of the Arkansas Rules of Criminal Procedure provides that any law enforcement officer may arrest a person pursuant to a warrant in any county of the state. The officer need not have a warrant in his possession at the time of arrest. Ark. R. Crim. P. 4.3. The circuit court found that the warrant was on the computer and that the request for confirmation of the warrant was a matter of terminology or verbiage used within the Texarkana Police Department in dealing with local warrants. We cannot say that the finding is clearly erroneous. In light of the facts presented in this case, we cannot say that the circuit court's denial of the motion to suppress is clearly against the preponderance of the evidence.

Affirmed.

KLAPPENBACH and MURPHY, JJ., agree.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

6